# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALVIN HOLT, | 1:19-cv-00930-NONE-GSA-PC |
| Plaintiff, | **<u>SCREENING ORDER</u>** |
| vs. | **ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND** |
| M. ALVARADO, et al., | **(ECF No. 1.)** |
| Defendants. | **THIRTY-DAY DEADLINE TO FILE FIRST AMENDED COMPLAINT NOT EXCEEDING 25 PAGES** |

## I.    BACKGROUND

Calvin Holt ("Plaintiff") is a state prisoner proceeding *pro se* with this civil rights action pursuant to 42 U.S.C. § 1983.  On March 19, 2019, Plaintiff filed the Complaint commencing this action at the Kings County Superior Court in Hanford, California.  (ECF No. 1 at 5.)  On July 3, 2019, the case was removed to this federal court under 28 U.S.C. § 1441(a) by defendants M. Alvarado, A. Shaw, S. Sherman, and M. Owens.  (<u>Id.</u> at 1.)  The Complaint is now before the court for screening.  28 U.S.C. § 1915.

## II.   SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

1

court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  While factual allegations are accepted as true, legal conclusions are not.  Id.  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id.

III.   SUMMARY OF ALLEGATIONS IN THE COMPLAINT

Plaintiff is presently incarcerated at the California Substance Abuse Treatment Facility (SATF) in Corcoran, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR), where the events at issue in the Complaint allegedly occurred.  Plaintiff names as defendants M. Alvarado (Correctional Officer), A. Shaw (Appeals Coordinator), S. Sherman (Warden), and M. Owens (Lieutenant) (collectively, "Defendants").  A summary of Plaintiff's allegations follows:

On June 7, 2018, defendant C/O Alvarado filed a Rules Violation Report (RVR) #5151248 against Plaintiff, accusing Plaintiff of violating California Code of Regulations Title 15 § 3005(c) (Refusing to Accept Assigned Housing).  Defendant Alvarado made a false report

against Plaintiff in violation of Cal. Penal Code § 118(a) (Perjury).  A similar charge was pending against Plaintiff pursuant to RVR #5109370, which was adjudicated later.

On June 17, 2018, defendant Lt. M. Owens served as the Senior Hearing Officer for Plaintiff's hearing on RVR #5151248.  Plaintiff argued that because a prior similar charge was pending against him, RVR #5151248 should be dismissed under CDCR's Stacking Laws.[1] Plaintiff also presented exculpatory evidence that his rights to due process and equal protection had been violated.  Defendant Owens turned a blind eye to the Stacking Law's provisions and blatantly disregarded all of Plaintiff's exculpatory evidence.  Lt. Owens found Plaintiff guilty and penalized him with an unjustified 90 days credit forfeiture as well as punitive deprivations of liberty and privileges enjoyed by similarly situated inmates.

Defendants A. Shaw and S. Sherman are supervisory officials who reviewed Plaintiff's administrative appeals, which placed them on notice of the violations against Plaintiff by the culpable officers.  Because of their knowledge, Shaw's and Sherman's  responses to Plaintiff's appeals contributed to the Plaintiff's expected damages for violations of Plaintiff's rights to liberty, due process, and equal protection, and the cruel and unusual punishment suffered by Plaintiff.

On July 16, 2018, Plaintiff filed an administrative appeal, log no. SATF-D-18-03893, regarding the injustice against him.  Plaintiff received a favorable ruling at the third/final level of review of his appeal by the Chief of Inmate Appeals, dated January 11, 2019, stating that Plaintiff's issues have merit [and] SATF shall order RVR #5151248 dismissed in the interest of justice.  Unfortunately, by the time his appeal was granted on January 11, 2019, Plaintiff had already suffered the illicitly assessed losses of privileges and liberty.

On October 5, 2018, Plaintiff filed a Government Claim that was denied on or about December 10, 2018.

Plaintiff seeks monetary damages as relief.

---

[1] Stacking is defined as charging an inmate with multiple violations (CDC Form 115s) for an event which warrants a single report or issuing consecutive reports for grooming, refusal to submit to drug testing, or work/education related offences before the previous report is adjudicated.  (CDCR memorandum to Wardens from David Tristan, Deputy Director Institutions Division, dated June 23, 1998 titled "Clarification of "Stacking" as Related to the Inmate Disciplinary process;" ECF No. 1 at 85.)

**IV.    PLAINTIFF'S CLAIMS**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."  Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."  Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

///

## A.      This Case is not Heck-Barred

When a prisoner challenges the legality or duration of his custody, or raises a constitutional challenge which could entitle him to an earlier release, his sole federal remedy is a writ of habeas corpus. Preiser v. Rodriguez, 411 U.S. 475 (1973); Young v. Kenny, 907 F.2d 874 (9th Cir. 1990), cert. denied 11 S.Ct. 1090 (1991).  When seeking damages for an allegedly unconstitutional conviction or imprisonment, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Heck v. Humphrey, 512 U.S. 477, 487-88 (1994). "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 488.

Here, Plaintiff has submitted evidence that the guilty finding against him at the RVR hearing was overturned through the administrative appeals process, and he seeks only monetary damages as relief.  Therefore, this case is properly brought under § 1983 and is not barred by Heck.

## B.      Due Process – Fourteenth Amendment Claim

The Due Process Clause protects prisoners from being deprived of life, liberty, and property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).

Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481–84, 115 S.Ct. 2293 (1995).  Liberty interests created by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484; Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).  There is no single standard for determining whether a prison hardship is

atypical and significant, and the "condition or combination of conditions or factors . . . requires case by case, fact by fact consideration." Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) (quoting Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996)). Three guideposts cited in Sandin's analysis, however, provide a helpful framework: 1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody," and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence. Ramirez, 334 F.3d at 861 (citing Sandin, 515 U.S. at 486–87, 115 S.Ct. 2293; Keenan, 83 F.3d at 1089).

A prisoner is entitled to certain due process protections when he is charged with a disciplinary violation. Serrano v. Francis, 345 F.3d 1071, 1077 (9th Cir. 2003). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken." Id. These procedural protections, however, "adhere only when the disciplinary action implicates a protected liberty interest . . . ." Id. (citations omitted).

There is no due process right to be free from false disciplinary charges. The falsification of a disciplinary report does not state a standalone constitutional claim. Canovas v. California Dept. of Corrections, 2:14–cv–2004 KJN P, 2014 WL 5699750, n.2 (E.D. Cal. 2014); see e.g., Lee v. Whitten, 2:12–cv–2104 GEB KJN P, 2012 WL 4468420, *4 (E.D. Cal. 2012). There is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). "Specifically, the fact that a prisoner may have been innocent of disciplinary charges brought against him and incorrectly held in administrative segregation does not raise a due process issue. The Constitution demands due process, not error-free decision-making." Jones v. Woodward, 2015 WL 1014257, *2 (E.D. Cal. 2015) (citing Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994); McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983)). Therefore, Plaintiff has no protected liberty interest against false reports against him or having false information in his file.

Plaintiff has a protected liberty interest in the loss of good time credits.  Gibbs v. Sanchez, No. CV 16-9013-RGK (PLA), 2019 WL 3059579, at *7 (C.D. Cal. Apr. 26, 2019), report and recommendation adopted, No. CV 16-9013-RGK (PLA), 2019 WL 4266518 (C.D. Cal. June 21, 2019) (quotation marks omitted).  To be sure, following Sandin, the Ninth Circuit has held that a state can create a protected liberty interest in a shortened prison sentence resulting from the loss of good time credits.  Id. (quotation marks omitted) (citing see, e.g., Gotcher v. Wood, 66 F.3d 1097, 1100 (9th Cir.1995), vacated and remanded on other grounds, 520 U.S. 1238, 117 S. Ct. 1840, 137 L. Ed. 2d 1045 (1997); see also Wolff, 418 U.S. at 557 (holding that inmate who faces loss of state-created liberty interest such as good time credits is entitled to "those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated")).  However, where, as here, the guilty finding against Plaintiff was overturned, restoring his good time credits, Plaintiff no longer has a protectable liberty interest because in his present situation the loss of credits will not affect the duration of his sentence.

Double-cell status does not represent an atypical and significant hardship or present a restraint on Plaintiff's freedom not expected from his incarceration.  Wilkins v. Macomber, No. 216CV0475TLNCMKP, 2018 WL 1960765, at *4 (E.D. Cal. Apr. 26, 2018).  Plaintiff alleges that in addition to 90 days of credit forfeiture, he was also deprived of liberty and privileges enjoyed by similarly situated inmates.  Plaintiff provides evidence that he lost 180 days of privileges which were not mitigated, (ECF No. 1 at 80), and he alleges that by the time his appeal was granted on January 11, 2019, Plaintiff had already suffered the illicitly assessed losses of privileges and liberty.  The Supreme Court has concluded that the Due Process Clause itself does not grant prisoners a liberty interest in not losing privileges, see Sandin, 515 U.S. at 485–86 and Hewitt, 459 U.S. at 468, or in not losing privileges, Baxter v. Palmigiano, 425 U.S. 308, 322, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), and Plaintiff's Complaint does not contain any factual allegations to demonstrate that the conditions he was subjected to imposed an atypical or significant hardship on him in relation to the ordinary incidents of prison life.

///

Based on the foregoing, Plaintiff has not shown that he is entitled to any procedural due process protections in conjunction with any losses suffered as a result of his guilty finding on RVR #5151248.   Accordingly, Plaintiff's allegations fail to give rise to a due process claim under the Fourteenth Amendment.   Plaintiff shall be granted leave to file an amended complaint curing, if he can,  the deficiencies found in this claim by the court.

### C.    Equal Protection

Plaintiff brings a claim for violation of his rights to equal protection.   The Equal Protection Clause requires the State to treat all similarly situated people equally.  See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). This does not mean, however, that all prisoners must receive identical treatment and resources. See Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972); Ward v. Walsh, 1 F.3d 873, 880 (9th Cir. 1993); Allen v. Toombs, 827 F.2d 563, 568–69 (9th Cir. 1987).

"To prevail on an Equal Protection claim brought under § 1983, Plaintiff must allege facts plausibly showing that '"the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a protected class,'" (citing see Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001)), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff claims he was deprived of liberty and privileges enjoyed by similarly situated inmates.   However, Plaintiff has not alleged facts demonstrating that he was intentionally discriminated against on the basis of his membership in a protected class, or that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose.   Therefore, Plaintiff fails to state a claim for relief for violation of his right to equal protection.

///

### D.     Prison Appeals Process

Plaintiff's allegations against defendants Shaw and Sherman pertain to their review and handling of Plaintiff's inmate appeals.  "[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez, 334 F.3d at 860 (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) accord Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner).  "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing prisoner's administrative appeal generally cannot serve as the basis for liability in a section 1983 action. Buckley, 997 F.2d at 495.  The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct.  "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir. 2005) accord George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir. 1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir. 1996).; Haney v. Htay, No. 1:16-CV-00310-AWI-SKO-PC, 2017 WL 698318, at *4–5 (E.D. Cal. Feb. 21, 2017).

Thus, Plaintiff's allegations that defendants Shaw and Sherman failed to properly process Plaintiff's appeals fail to state a cognizable claim.

### E.     Supervisory Liability

Plaintiff claims that defendants Shaw and Sherman are liable for damages sought by Plaintiff because they work in supervisory positions.  Plaintiff is advised that "[l]iability under [§] 1983 arises only upon a showing of personal participation by the defendant.  A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or

9

directed the violations, or knew of the violations and failed to act to prevent them.  There is no *respondeat superior* liability under [§] 1983."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted).  Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights.  Iqbal, 556 U.S. at 676; Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).  Therefore, to the extent that Plaintiff seeks to impose liability upon any of the defendants in their supervisory capacity, Plaintiff fails to state a claim.

### F.    Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132

To the extent that Plaintiff seeks to bring a claim under the ADA, Plaintiff fails to state a claim.  Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, and § 504 of the Rehabilitation Act, as amended and codified in 29 U.S.C. § 701 *et seq.* ("RA"), prohibit discrimination on the basis of a disability in the programs, services or activities of a public entity. Federal regulations require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

The elements of a cause of action under Title II of the ADA are: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). A cause of action under § 504 of the RA essentially parallels an ADA cause of action. See Olmstead v. Zimring, 527 U.S. 581, 590 (1999); Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001).

Monetary damages are not available under Title II of the ADA absent a showing of discriminatory intent. See Ferguson v. City of Phoenix, 157 F.3d 668, 674 (9th Cir. 1998). To show discriminatory intent, a plaintiff must establish deliberate indifference by the public entity. Duvall, 260 F.3d at 1138. Deliberate indifference requires: (1) knowledge that a harm to a

federally protected right is substantially likely, and (2) a failure to act upon that likelihood.  Id. at 1139. The first prong is satisfied when the plaintiff identifies a specific, reasonable and necessary accommodation that the entity has failed to provide, and the plaintiff notifies the public entity of the need for accommodation or the need is obvious or required by statute or regulation. Id. The second prong is satisfied by showing that the entity deliberately failed to fulfill its duty to act in response to a request for accommodation. Id. at 1139-40. Punitive damages may not be awarded in suits brought under Title II of the ADA. Barnes v. Gorman, 536 U.S.181, 189 (2002).

Here, while Plaintiff may be able to define himself as a qualified individual with a disability under the ADA, he has not shown that he was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and that such exclusion or discrimination was by reason of his disability.  Therefore, Plaintiff fails to state a claim under the ADA.

### G.      Violation of Penal Code

Plaintiff alleges that defendant Alvarado submitted a false report against him in violation of Penal Code § 118(a).  This allegation suggests that Plaintiff seeks to bring a criminal action against defendant Alvarado.  "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws."  Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted). A § 1983 action is a civil action brought under the Civil Rights Act.  As a rule, civil actions may be started by individuals, but criminal actions may only be started by the state and not by individuals.  Indeed, with limited  exceptions, none of which applies to § 1983 actions, federal law does not allow a private citizen to bring a criminal prosecution against another citizen.  Therefore, Plaintiff is unable to bring a criminal action under § 1983 against defendant Alvarado for violation of the Penal Code, and he therefore fails to state a claim under the Penal Code.

### H.      Conditions of Confinement – Eighth Amendment Claim

Plaintiff indicates in the Complaint that he brings a claim under the Eighth Amendment. The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of

confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).  Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment.  Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002); Rhodes, 452 U.S. at 346.  Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).

To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety.  E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).  The deliberate indifference standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ."  Farmer, 511 U.S. at 834.  "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation.  Johnson, 217 F.3d at 731.  Rather, extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  Farmer, 511 U.S. at 834; Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992).  The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim.  Johnson, 217 F.3d at 731.  Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ."

Farmer, 511 U.S. at 837.  Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it.  Id. at 837-45.  Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton.  Id. at 835; Frost, 152 F.3d at 1128.

Plaintiff has not alleged any extreme deprivations that rise to the level of a violation of the Eighth Amendment.  Moreover, Plaintiff has not alleged facts showing that any of the Defendants knew about a substantial risk of serious harm to Plaintiff, acted unreasonably while deliberately ignoring the risk, and causing Plaintiff harm.  Therefore, Plaintiff fails to state a claim against any of the Defendants for violation of the Eighth Amendment.

## I.    **Loss of Personal Property**

To the extent that Plaintiff brings a claim for a loss of his personal property, he fails to state a claim.  Prisoners have a protected interest in their personal property.  Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974).  However, a plaintiff has no due process claim based on the defendants' unauthorized deprivation of his personal property—whether intentional or negligent—if a meaningful state post-deprivation remedy for his loss is available.  See Hudson v. Palmer, 468 U.S. 517, 533 (1984).  California's tort claim process provides that adequate post-deprivation remedy.  Barnett v. Centoni, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–895) ("[A] negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy."); see also Teahan v. Wilhelm, 481 F. Supp. 2d 1115, 1120 (S.D. Cal. 2007); Kemp v. Skolnik, No. 2:09-CV-02002-PMP, 2012 WL 366946, at *6 (D. Nev. Feb. 3, 2012) (finding prisoner's alleged loss or destruction of newspaper, magazines, and books failed to state a Fourteenth Amendment claim pursuant to Hudson and noting that "[i]f Plaintiff wishes to recoup the value of the alleged lost materials, he will have to file a claim in small claims court in state court.").

## V.    **CONCLUSION AND ORDER**

For the reasons set forth above, the court finds that Plaintiff fails to state any cognizable claims in the Complaint against any of the Defendants for violating his constitutional or other

federal rights.  Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires."  Therefore, Plaintiff shall be granted leave to amend the complaint.  The court will provide Plaintiff with thirty days to file a First Amended Complaint curing the deficiencies identified above.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

The amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'"  Iqbal at 678 (quoting Twombly, 550 U.S. at 555).  Based on the claims Plaintiff brings in the original Complaint, he does not need more than 25 pages, including exhibits to the Complaint, to state his allegations and claims.  Therefore, Plaintiff's First Amended Complaint may not exceed the court's 25-page limitation.

Plaintiff must demonstrate in his amended complaint how the conditions complained of have resulted in a deprivation of his constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The amended complaint must allege in specific terms how each named defendant is involved.

Plaintiff may not change the nature of this suit by adding unrelated claims in his amended complaint.  George, 507 F.3d at 607 (no "buckshot" complaints).  Also, Plaintiff is not granted leave to add allegations to the amended complaint of events that occurred after March 19, 2019, the date the original Complaint was filed.

As a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once an amended complaint is filed, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The First Amended Complaint should be clearly and boldly titled "FIRST AMENDED COMPLAINT," refer to the appropriate case number, and be an original signed under penalty of perjury.

Accordingly, **IT IS HEREBY ORDERED** that:

1.      Plaintiff's Complaint, filed on March 19, 2019, is DISMISSED for failure to state a claim upon which relief may be granted, with leave to amend;

2.      The Clerk's Office shall send Plaintiff a civil rights complaint form;

3.      Within thirty days from the date of service of this order, Plaintiff shall file a First Amended Complaint <u>not exceeding 25 pages</u>, curing the deficiencies in the Complaint identified by the court;

4.      Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:19-cv-00930-NONE-GSA-PC; and

5.      Plaintiff's failure to comply with this order shall result in a recommendation that this action be dismissed for failure to state a claim.

IT IS SO ORDERED.

Dated:   **August 21, 2020**                      **/s/ Gary S. Austin**
                                                UNITED STATES MAGISTRATE JUDGE